**LAW OFFICE OF
LEE PHILLIPS, P.C.**
209 N. Elden Street
Flagstaff, Arizona  86001
(928) 779-1560
(928) 779-2909 Facsimile
leephillips@notguilty1.com

**LEE PHILLIPS**
State Bar No.  009540
Attorney for the Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

**TINA ARTIGLIO and
CRISTI TUTTY,**

     Plaintiffs,

  vs.

**MOHAVE COUNTY,  by and
through the Mohave County
Board of Supervisors,**

**TOM SHEAHAN, Sheriff of
Mohave County, in his official
capacity as Sheriff of Mohave
County,**

**JEFFREY BROWN, individually
and in his official capacity as Jail
Commander of Mohave County,**

**DANNY RUSSELL, individually
and in his official capacity as
Direct Supervisor of Officer
Correll,**

**SHANNON MICHAEL CORRELL,
individually and in his official
capacity as a Mohave County**

Case No.:

**42 U.S.C §1983 COMPLAINT FOR
DECLARATORY AND INJUNCTIVE
RELIEF AND MONETARY
DAMAGES FOR VIOLATION OF
PLAINTIFFS' CIVIL RIGHTS**

1

**Detention Officer,**

Defendants.

_____

## COMPLAINT AND JURY DEMAND

**I.**    **Nature of the Case**

1. Plaintiffs, Tina Artiglio and Cristi Tutty bring this lawsuit seeking declaratory, injunctive and monetary relief pursuant to 42 U.S.C. §1983, §1988 and the Fourth and Fourteenth Amendments to the United States Constitution and under the law of the State of Arizona, against Defendants, Mohave County, former Mohave County Sheriff Department Officer Shannon Correll, Mohave County Sheriff, Tom Sheahan, and Mohave County Jail Commander, Jeffrey Brown.  This lawsuit is brought to redress the injuries Plaintiffs suffered as a result of the Defendants' conduct, policies, customs and procedures relating to the treatment of female detainees confined in the Mohave County Vanderslice Jail Substation in Mohave Valley, while Plaintiffs were in the care and custody of Mohave County, its Sheriff and his Department.  In the manner described herein, Defendants, acting under the color of state law and within the scope of their employment, knowingly allowed a policy and practice of detaining female detainees over night in the Substation where the detainees were under the control and supervision of Defendant, Shannon Correll, a male detention

officer, who himself was not properly supervised which allowed him to commit sexual crimes against the Plaintiffs with impunity.  In addition, the Defendant Sheriff, Jail Commander and Mohave County developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of the female detainees who were held at the Substation, including detaining the women overnight without proper or adequate facilities or staff to safely house female detainees.  As a direct result of these policies and customs, Defendant Shannon Correll was able to commit acts of unlawful sexual misconduct on Plaintiffs including, but not limited to, unlawful strip and body cavity searches, sexual assault and unlawful sexual conduct.

2. As a result of the above described policies and customs, officers of Mohave County, including the defendant officers, believed that their actions would not be properly monitored by supervising officers and that misconduct would not be investigated or sanctioned, but would be tolerated.  The above described policies and customs demonstrated a deliberate indifference on the part of policymakers of Mohave County to the constitutional rights of persons within the County, and were the cause of the violations of Plaintiffs' rights alleged herein.

## II.  Jurisdiction and Venue

3. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§§1331, 1343, and 2201, and the supplemental jurisdiction of this Court to entertain claims arising under state laws pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in the District of Arizona, as the parties are residents of and/or headquartered in Arizona and the conduct which gives rise to this action occurred within that District.  28 U.S.C. §1391(b).  Each claim herein arises out of incidents that occurred on July 6, 2012 and August 4, 2012, within Mohave County and the State of Arizona and involved officers employed by the Mohave County Sheriff's Department and acting under the color of law and the authority of Mohave County and its Board of Supervisors.

## III.   **Parties**

### A.   **Plaintiffs**

5. Plaintiff, Tina Artiglio, is a citizen of the United States, and a resident of Arizona.  Plaintiff Artiglio was unlawfully subjected to unlawful sexual conduct by Defendant Shannon Correll on July 6, 2012, while in the care and custody of the Mohave County Sheriff's Department.

6.  Plaintiff, Cristi Tutty, is a citizen of the United States, and a resident of Arizona.  Plaintiff Tutty was unlawfully subjected to unlawful

sexual conduct by Defendant Shannon Correll on August 4, 2012, while in the care and custody of the Mohave County Sheriff's Department.

**B.    Defendants**

7. Defendants Correll, Sheahan, Brown and Russell were at all times relevant to this Complaint duly appointed officers of the Mohave County Sheriff's Department, acting under color of law, including the statutes, ordinances, regulations, policies, customs and usages of the Mohave County Sheriff's Department and/or Mohave County.

8. Defendant Mohave County is a political subdivision of the State of Arizona as further defined in Title II of the Arizona Revised Statutes and is the public employer of the individual defendant officers named herein.

**IV.    <u>Factual Background</u>**

<u>**TINA ARTIGLIO**</u>

9. On July 6, 2012, Ms. Artiglio was arrested for an alleged traffic warrant and transported to the Mohave County Sheriff Department's Vanderslice Substation in Mohave Valley.  When Ms. Artiglio was being booked into the jail Detention Officer Correll began telling her how "sexy" she was, that she had the "hottest body" he had ever seen, and he asked her if she "wanted to play and have some fun".  Ms. Artiglio tried to ignore Correll but she could not get him to stop harassing her.  Officer Correll then

instructed Ms. Artiglio to go with him to the laundry room to get some jail clothes. Ms. Artiglio began to get suspicious and feel uncomfortable, telling him that there were a lot of cameras and someone might see; however, he told her that no one watches the cameras and there were no cameras past the smoking area. Officer Correll told her that he could also erase the video from the cameras and if anyone asked, he would just say he was on a smoke break.  Ms. Artiglio then acquiesced to Officer Correll's authority and went with him.

10. When the two entered the laundry room, which is located in the storage shed outside of the main station where Officer Correll later took Plaintiff Tutty, Officer Correll told Ms. Artiglio to sit on the washing machine and she complied.  Correll undid his pants and proceeded to masturbate. He ejaculated towards Ms. Artiglio and then approached her and pushed her backwards onto the washing machine, lifted up her dress and began to have sexual intercourse with her, which was forceful and lasted approximately 20 to 30 minutes. No protection was used. She did not perform oral sex on him, but believes he performed oral sex on her. Although Ms. Artiglio never said, "No" and did not yell out for help, she was scared and felt like she had no choice but to endure the assault as she did not know what he would do to her if she denied his advances. Ms. Artiglio

refused to talk dirty to Correll when he asked her to.  Moreover, Ms. Artiglio

refused to show Officer Correll her breasts when he asked to see them.  He

did, though, end up taking off her bra, which he placed with her other

clothing items after the assault.

11. Two inmates who were confirmed to have been incarcerated on

July 6, 2012, told Detectives later that they overheard Officer Correll

bragging to other inmates about having sex with a female inmate that night.

One inmate did not remember the name of the female but described her as

wearing a black dress and that she had reddish, bright colored hair.  The

booking photo of Ms. Artiglio clearly shows Ms. Artiglio wearing a black

dress and that her hair is a red color.

12. A second inmate reported he was sleeping in his cell when he

heard a woman come in and overheard Officer Correll, who he described

as a "loose cannon," say he "had his way in the back with a female inmate".

The second inmate also described the female as wearing a black dress and

with short brownish or reddish hair.

13. After being released from jail, Ms. Artiglio disclosed to her mother

what happened. Her mother wanted Ms. Artiglio to file a complaint;

however, Ms. Artiglio was adamant that she was afraid of Officer Correll

and did not want to report anything because she did not know whether she

would end up speaking to a "good or bad cop."  She further told her mother that she was terrified that Officer Correll and other officers could harm her or retaliate against her if she made a complaint.  The sexual assault incident only came to light on December 19, 2012 when Ms. Artiglio disclosed to another officer that she had been sexually assaulted by a guard at the Vanderslice Substation months earlier. Ms. Artilgio identified Officer Shannon Correll during a photo lineup and when asked by the Detective if there was a reason she had chosen that particular individual, Ms. Artiglio said, "Because that's who it is".

14. Defendant Correll later pled guilty to unlawful sexual conduct involving Ms. Artiglio.  Defendant Correll was subsequently sentenced to prison for his assaults on Ms. Artiglio and Ms. Tutty.

### Cristi Tutty

15. On August 4, 2012 at approximately 2:33 a.m., Plaintiff, Cristi Tutty, was involved in an argument with her then boyfriend, Casey Phillips. Mr. Phillips, who is the father of Ms. Tutty's children, was arrested but Ms. Tutty asked to be taken to jail so that Mr. Phillips, who was scheduled to work the next day, would not lose his employment.  Ms. Tutty was then taken to the Mohave County Sheriff Department's ("Department") Vanderslice Substation in Mohave Valley, Arizona ("Substation"). The

arresting officer was Mohave County Deputy Sheriff, M. Rogers (P58).

Deputy Rogers walked Ms. Tutty into the Substation where he asked her a few questions and completed his report. When Officer Rogers was finished, he left the facility and Mohave County Sheriff's Department Detention Officer Shannon Correll (J179) took custody of Ms. Tutty. Officer Shannon Correll was the only officer at the facility that night and was responsible for the care, control and supervision of both male and female detainees and/or inmates at the facility.  Upon information and belief it was a common practice of the Department to have only one unsupervised male detention officer on duty at the Substation and to allow that officer to have unsupervised contact with and control over female detainees and/or inmates who were housed at the Substation.

16. Officer Correll took Ms. Tutty into a room, across from the facility's kitchen area, which contained several surveillance monitors. Officer Correll sat down at his computer and directed Ms. Tutty to remove any body jewelry. After doing so, he asked her the color of her bra, shirt, shorts and flip flops. After she answered his questions, he asked her the color of her underwear. Ms. Tutty replied that she was not wearing any underwear at that time.  Officer Correll responded by stating, "that's hot".

Ms. Tutty attempted to ignore his comment.  Officer Correll then took Ms. Tutty to be finger printed.

17. After the finger printing was finished, Officer Correll advised Ms. Tutty that he had to perform a "mandatory" strip search of her person prior to her being booked into the facility.  Officer Correll directed Ms. Tutty to follow him to a door that exited the building to an outside area that was fenced in.  Officer Correll walked Ms. Tutty to a storage shed located behind the detention facility.  Officer Correll walked Ms. Tutty up a plywood ramp into the shed.  Once inside, Officer Correll shut the door and Ms. Tutty observed yard tools and inmate uniforms and orange shoes in the shed. Ms. Tutty asked Officer Correll if she was to change into a jail uniform afterward. Officer Correll responded that he was just going to conduct the strip search there in the shed. He then told Ms. Tutty to move away from the window so that "they" could not see her. Ms. Tutty stood in front of the door with her back to the door and with Officer Correll facing her.

18. Officer Correll instructed Ms. Tutty to remove her shirt.  Ms. Tutty complied with his instruction.  As Ms. Tutty faced Officer Correll, he directed her to remove her bra.  She complied and placed both her shirt and bra on the chair next to her. Officer Correll then directed Ms. Tutty to

face him topless and raise her arms. He then instructed her to remove her

shorts.  Ms. Tutty informed him that she didn't feel comfortable complying

with his instruction because she was not wearing any underwear.  Officer

Correll replied that it was a "mandatory" strip search. Ms. Tutty reluctantly

removed her shorts.  Officer Correll then directed Ms. Tutty to face him and

to spread her legs. He then directed Ms. Tutty to turn her back to him,

spread her legs, bend over and cough. Ms. Tutty was mortified by this

directive because she had recently given birth to her daughter and was

menstruating at the time.  Nevertheless, she complied with the directive.

Upon seeing her condition, Officer Correll instructed her to put her clothes

back on. As Ms. Tutty started to do so, Officer Correll commented that she

had nice breasts. He then told Ms. Tutty that he would love to touch her

breasts.  Ms. Tutty ignored his proposition and finished dressing.  Officer

Correll stood in front of Ms. Tutty as though he was waiting for an answer.

A few moments later Officer Correll opened the door and allowed Ms. Tutty

to exit the shed.

19. As they were walking back into the detention facility, Officer

Correll told Ms. Tutty that she had an "amazing body."  They walked back

into the building and Ms. Tutty was directed to sit in the chair located

outside Officer Correll's office. Officer Correll entered information into the

computer while Ms. Tutty sat in the chair thinking about what had just

occurred and worrying about what would happen next. Officer Correll asked

Ms. Tutty what it would take to get her "to go back out into the shed" with

him. Ms. Tutty looked at him and shook her head no. Officer Correll went

back into his office, looked at Ms. Tutty one more time, and asked her

again about going back out into the shed. Ms. Tutty responded that she

was a "married mother."  Officer Correll then stated that Ms. Tutty was a

"mother he would love to do dirty things to." Officer Correll also made a

statement to Ms. Tutty about how well his propositions had worked

previously with other female arrestees and/or inmates.

20. After some time Officer Correll told Ms. Tutty that since she would

not go back outside with him, there was a mat on the floor for her to sleep

on. Ms. Tutty laid on the mat and covered herself with the grey and white

wool blanket. As Officer Correll walked back into his office he commented

to Ms. Tutty that he could "guarantee" she would have had a "good time" if

she had gone back to the shed with him. At this point, Ms. Tutty feared that

Officer Correll would sexually assault her because he seemed determined

to have sexual relations with her.  Ms. Tutty laid on the floor awake for as

long as she could until she finally fell asleep. Ms. Tutty was awakened by

Detention Officer Montgomery telling her that she was going to be seeing a

judge shortly.  When Ms. Tutty saw the judge she was ordered released on her own recognizance.

21. When Ms. Tutty was picked up by her mother, she told her mother what had happened, how humiliated she was and how dirty she felt after the experience. Ms. Tutty's mother could not believe that a strip search had been conducted without a female officer present. Upon arriving at her home Ms. Tutty told her boyfriend, Casey Phillips, about the strip search.  Mr. Phillips then called the Vanderslice Substation. He spoke with Detention Officer Montgomery about what had occurred and about Ms. Tutty's concerns about the Sheriff Department's policies concerning strip searches of females. Officer Montgomery gave Mr. Phillips a phone number to call regarding the concerns and advised that nothing could be done until the following Monday.

22. On August 12, 2012, Ms. Tutty came to the Mohave County's Sheriff's Department in Kingman, Arizona and provided her statement concerning the strip search incident to Detective McNally.  Ms. Tutty's mother, Caron Warner, also provided a statement.   Later that day, Detective McNally interviewed Detention Officer Correll concerning Ms. Tutty's allegations. Officer Correll initially denied Ms. Tutty's allegations but later admitted taking Ms. Tutty to the shed and having her remove all of her

clothes so he could conduct an unauthorized strip search of Ms. Tutty who he found attractive.

23. On August 20, 2012, Officer Correll was arrested at his home by Detective McNally. Officer Correll was booked into the Mohave County Sheriff's Detention Center in Kingman, Arizona.  While at the detention center, Officer Correll admitted to nurse Jessica Rachett that he had strip searched Ms. Tutty because he was "bored."

24. During the investigation of Officer Correll, Detective(s) interviewed male inmates who were at the Substation on August 4, 2012. Two inmates told the Detective(s) that they overheard some of the conversation between Officer Correll and Ms. Tutty and confirmed Ms. Tutty's account of the conversation.  The inmates also told the Detective(s) that they had witnessed Officer Correll make sexual advances towards at least two other female detainees on other nights and that he had bragged to the male inmates about having had sexual intercourse in the shed with at least one of those female inmates. According to the inmates, this incident occurred a few weeks prior to the incident involving Ms. Tutty.  The inmates provided the Detective(s) with descriptions of the two other female inmates who Correll had made advances toward.

25. On November 15, 2012, Officer Correll pled guilty to one count of unlawful sexual conduct involving Ms. Tutty.  Three other felony charges were dismissed as part of the plea agreement.

A timely notice of claim was served on the Defendant Officers and entities involved pursuant to A.R.S. §12-821.01.  The claim was denied.

### Mohave County Sheriff's Office

26.  The Mohave County Sheriff's Office is a law enforcement agency and branch of Mohave County.  Sheriff Tom Sheahan is, and was at all relevant times, the elected Sheriff of Mohave County and the individual responsible for the conduct of all officers, staff or employees of the Mohave County Sheriff's Office.  In 2012 Bruce Brown was the Commander of the Mohave County Jails including the main detention facility located in Kingman, Arizona and the jail substations located in Mohave Valley and Lake Havasu.  Bruce Brown has since died and been replaced by Jeffrey Brown who is currently the Jail Commander.  Jeffrey Brown was the Director or Deputy Commander of the Mohave County jails in 2012 when all relevant events occurred.  Danny Russell was the Sergeant in charge of the Mohave Valley and Lake Havasu jail substations during January 1, 2012 and August 4, 2012 when the relevant events occurred at the Mohave Valley substation.  Mr. Russell was Officer Shannon Correll's direct

supervisor in July and August, 2012 when the Plaintiffs were the victims of Mr. Correll's sexual misconduct.

27.  Officer Correll was transferred from the main jail facility in Kingman to the Mohave Valley substation in January 2012.  Prior to his transfer he had been involved in an improper extra marital romantic relationship with a female detention officer.  The incident caused then Jail Commander Bruce Brown to send a memorandum to Sheriff Sheahan and other high ranking Mohave County officers or employees advising them that he could not recommend Officer Correll for the deputy standing list based upon the incident and that Officer Correll did not maintain a "command presence for maturity at this time."  The incident and the disciplinary action taken in response to the incident were not recorded in Officer Correll's monthly performance evaluations nor was Officer Correll made aware of the Jail Commander's action.

28.  When Officer Correll was assigned to the Mohave Valley Substation he was still a probationary employee.  Initially he was assigned to work the dayshift (7-4) but in April he was re-assigned to the graveyard shift (11-7) and was working that shift at the time he assaulted Plaintiff Artiglio in July 2012 and Plaintiff Tutty in August 2012.

29.  During all of this time his direct supervisor was Sgt. Danny Russell.  Sgt. Russell worked the day shift (7-4) but because he was going to retire in August 2012 he was off duty on paid time off (pto) or his regular days off (rdo) the majority of time that Officer Correll was assigned to the Mohave County Substation.  During the time Sgt. Russell was off duty Officer Correll was supervised telephonically from the Kingman facility.

30.  Due to Sgt. Russell's absence and the shortage of detention officers at the substation between January-August 2012, officers frequently worked alone, without supervision or support.  During July and August 2012 when the Plaintiffs were assaulted by Officer Correll, he was left alone with the inmates, male and female, on Friday and Saturday nights. Officer Cunningham, the other officer working the graveyard shift (11-7) was left alone and unsupervised on Sundays and Mondays.

31.  Despite the fact that Sgt. Russell was not present at the substation the majority of the time between January-August 2012 and the fact that he was never present when Officers Correll or Cunningham were left alone and unsupervised during the graveyard shift (11-7), Sgt. Russell submitted monthly performance evaluations for Officer Correll purporting to record Officer Correll's performance as a detention officer at the substation. Upon information and belief Jail Commander Bruce Brown, Deputy

Commander Jeffrey Brown and Sheriff Sheahan were aware of the lack of supervision and adequate staffing at the Mohave Valley substation and took no action to address the problem.

## IV.   Claims for Relief

### Count I
### 42 U.S.C. §1983 Unreasonable Search and Seizure

32. Paragraphs 1 through 31 are incorporated herein by reference as though fully set forth.

33. Defendant, Shannon Correll, acting under color of law, subjected Plaintiff Tutty to an illegal strip and body cavity search, in violation of the Fourth Amendment guarantee against unreasonable searches and seizures.  Those actions give rise to Plaintiff Tutty's claims pursuant to the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §1983.

34. Defendant, Shannon Correll, acting under color of law, subjected Plaintiff Artiglio to an illegal strip and body cavity search, in violation of the Fourth Amendment guarantee against unreasonable searches and seizures.  Those actions give rise to Plaintiff Artiglio's claims pursuant to the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §1983.

35. The Defendant's acts were intentional and done in violation of Plaintiff Tutty and Plaintiff Artiglio's legal and constitutional rights, and have directly and proximately caused Plaintiffs' humiliation, mental pain, suffering and other injuries as described above.

**Count II**
**42 U.S.C. §1983 Unlawful Sexual Conduct (Plaintiff Tutty)**

36. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

37. Defendant, Shannon Correll, acting under color of law, engaged in intentional unlawful sexual conduct on August 4, 2012, when he directed Plaintiff Tutty, who was in his care and custody, to remove her clothing in his presence, to display her breasts and private parts to him and to bend over so that he could view her buttocks and vaginal area.

38. The Defendant's acts were intentional and done in violation of Plaintiff Tutty's legal and constitutional rights, and have directly and proximately caused Plaintiff Tutty to suffer humiliation, mental pain, suffering, and other injury described above.

39. The acts of Defendant Correll constituted a violation of A.R.S. §1419, Unlawful Sexual Conduct and give rise to Plaintiff Tutty's claims pursuant to the Fourth, and Fourteenth Amendments to the Constitution of the United States, and 42 U.S.C. §1983.

**Count III**
**42 U.S.C. §1983 Unlawful Sexual Conduct (Plaintiff Artiglio)**

40. Paragraphs 1 through 39 are incorporated herein by reference as though fully set forth herein.

41. Defendant Correll, acting under color of law, committed unlawful sexual conduct on July 6, 2012, when he directed Plaintiff Artiglio, who was in his care and custody, to accompany him to the storage shed behind the Mohave County Sheriff Department's Vanderslice Substation in Mohave Valley where he directed her to sit on the washing machine as he unbuttoned his pants and masturbated in front of her until he ejaculated towards her.  He then pushed Plaintiff Artiglio onto her back, raised her dress and engaged in non-consensual sexual intercourse with Plaintiff Artiglio and later removed her bra exposing her breasts.

**Count IV**
**42 U.S.C. §1983 Equal Protection**

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. Defendant, Shannon Correll, acting under color of law, engaged in intentional gender discrimination when he subjected Plaintiffs Tutty and Artiglio, but not the male detainees under his care and control, to a strip search and body cavity inspection.  In so doing, Defendant Correll has caused the Plaintiffs to suffer the deprivation of their fundamental rights to liberty and to be free from unlawful searches and seizures on account of their gender.  These actions violated Plaintiffs' rights to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States.

44. The acts of Defendant Shannon Correll were intentional and done in violation of Plaintiffs' legal and constitutional rights, and have directly and proximately caused Plaintiffs' humiliation, mental pain, and suffering, and other injuries as described above.

**COUNT V**
**42 U.S.C. §1983 Against Mohave County Sheriff, Tom Sheahan, Mohave County Sherriff Department's Jail Commander, Jeffrey Brown, Sergeant Danny Russell and Mohave County**

45. Paragraphs 1 through 44 are incorporated herein by reference as though fully set forth herein.

46. Upon information and belief, prior to July 6, 2012, Defendants developed and maintained policies or customs exhibiting deliberate

indifference to the constitutional rights of female detainees in the care and custody of Mohave County, which caused the violation of Plaintiffs Tutty's and Artiglio's rights.

47. It was the policy and/or custom of Mohave County to inadequately and improperly care for female detainees held at the Mohave Valley Substation by leaving them under the supervision of, and in the care and custody of, Defendant, Shannon Correll or other male detention officers or detainees, without proper supervision and without adequate facilities and other resources to house and protect female detainees from the conduct of Defendant, Shannon Correll or other male officers or detainees from 11:00 p.m. – 7:00 a.m. on most nights. This failure to supervise Defendant Correll allowed him to violate the rights of female detainees including, but not limited to, conducting strip searches and body cavity searches of females and committing unlawful sexual acts against these females while they were in the custody of Mohave County.

48. It was the policy and/or custom of Defendants to inadequately supervise its detention officers, including Defendant Correll, thereby failing to adequately discourage further constitutional violations on the part of Defendant Correll and its other officers.

49. As a result of the above described policies and customs, officers of the Mohave County Sheriff's Department, including Defendant Correll, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned. As a result of these policies and/or customs, Plaintiffs Tutty and Artiglio suffered the damages described above in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. .

**COUNT VI**
**Assault and Battery Against Defendant Shannon Correll**

50. Paragraphs 1 through 49 are incorporated herein by reference as though fully set forth.

51. Defendant Shannon Correll assaulted and battered Plaintiffs Tutty and Artiglio in violation of Arizona state law, the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

52. As a result of this assault and battery, Plaintiffs Tutty and Artiglio suffered damages as described above.

**COUNT VII**
**Infliction of Emotional Distress**

53. Paragraphs 1 through 52 are incorporated herein by reference as though fully set forth.

54. Defendant Correll, acting under the color of law, intentionally, recklessly or negligently inflicted emotional distress on Plaintiffs Tutty and Artiglio.

55. As a result of Defendant Correll's conduct, Plaintiffs Tutty and Artiglio suffered the damages described above in violation of Arizona state law, the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

## COUNT VIII
## Invasion of Privacy

56. Paragraphs 1 through 55 are incorporated herein by reference as though fully set forth.

57. Defendant Correll, under the color of law, intentionally engaged in the conduct described above, including the strip and body cavity search of Plaintiff Tutty, and the sexual assault of Plaintiff Artiglio, which misconduct constituted an unlawful and unwarranted invasion of Plaintiffs' privacy.

58. As a result of this unlawful invasion of privacy, Plaintiffs suffered gross humiliation, emotional distress and the other damages described above in violation of Arizona State law, the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983..

**V.   Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court:

(a) Award compensatory damages to Plaintiffs against the Defendants;

(b) Award punitive damages to Plaintiffs against Defendants Correll, Brown and Russell;

(c) Award such other injunctive and declaratory relief and further relief as this Court may deem appropriate;

(d) Enjoin Defendant Mohave County from housing female detainees at the Vanderslice Substation of the Mohave County Sheriff's Department's Jail without adequate and proper facilities, staff and other resources to safely protect and house female detainees; and

(e) Award reasonable attorney's fees and costs to Plaintiffs.

## VI.   **Jury Demand**

Plaintiffs hereby demand a trial by jury.

Respectfully submitted this __7th__ day of __July, 2014__.

/ss/

_____
Lee Phillips
Attorney for Plaintiffs,
Cristi Tutty and Tina Artiglio